IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
COOKEVILLE DIVISION

| | |
|---|---|
| SHELIA L. ALLEN,<br>    Plaintiff<br><br>v.<br><br><br>KILOLO KIJAKAZI,<br>ACTING COMMISSIONER OF<br>SOCIAL SECURITY<br>    Defendant. | Civil Action No. 2:21-cv-00029<br>Chief Judge Crenshaw / Frensley |

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. § 405(g), to obtain judicial review of the final decision of the Commissioner of Social Security denying Plaintiff Disability Insurance Benefits ("DIB"), as provided under Title II of the Social Security Act ("the Act"). The case is currently pending on Plaintiff's Motion for Judgment on the Administrative Record. Docket No. 14. Plaintiff has filed an accompanying Memorandum. Docket No. 15. Defendant has filed a Response, arguing that the decision of the Commissioner was supported by substantial evidence and should be affirmed. Docket No. 18, pp. 5, 11, 13.

Upon consideration of the parties' filings, the administrative record and applicable law, and for the reasons given below, the Magistrate Judge **RECOMMENDS** that Plaintiff's Motion for Judgment on the Administrative Record (Docket No. 14) be **GRANTED** and that this action be **REMANDED** for further consideration not inconsistent with this Report and Recommendation, pursuant to sentence four of 42 U.S.C. § 405(g).

### I. INTRODUCTION

Plaintiff initially filed an application for a period of disability, Disability Insurance Benefits

("DID"), and Supplemental Security Income ("SIS") on January 29, 2016.[1] TR 62. She alleged disability beginning October 29, 2014. Id. Plaintiff's applications were denied both initially and upon reconsideration. Id. Plaintiff then requested and received a hearing. Id. The Administrative Law Judge ("ALJ"), Todd Spangler, found that Plaintiff was not disabled within the meaning of the Social Security Act from October 29, 2014 (the date Plaintiff filed) to March 28, 2018 (the date of the ALJ's decision). TR 58, 63. Important to this decision today, ALJ Spangler found that Plaintiff was unable to perform any past relevant work. TR 69. ALJ Spangler made the following findings that are relevant to this matter:

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in the 20 CFR 404.1567(b) and 416.967(b) except lifting 20 pounds occasionally and 10 pounds frequently. He [sic] could stand, walk, and sit six hours in an eight-hour day. She could frequently climb ramps, stairs, ladders, ropes, and scaffolds. She could do occasional balancing, frequent stooping, and occasional kneeling, crouching, and crawling with no more than occasional overhead reaching bilaterally.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

TR 67, 69.

Plaintiff then filed another application for a period of disability and Disability Insurance Benefits ("DIB") on December 9, 2018, alleging that she had been disabled since May 1, 2018, due to shoulder pain, hand pain, back pain, neck pain, depression, anxiety, diabetes, inflammatory arthritis, thyroid disease, and obesity. TR 106, 173-76, 212. Plaintiff's application was denied both initially (TR 106) and upon reconsideration. TR 120. Plaintiff subsequently requested (TR 136) and received (TR 30-57) a hearing. Plaintiff's hearing was conducted on August 19, 2020, by

---

[1] The facts in this section are taken from ALJ Spangler's decision regarding Plaintiff's first social security application. TR 62-71. Neither party has raised any issue disputing the factual determinations of that decision.

Administrative Law Judge Randolph Alden. TR 30. Plaintiff and vocational expert ("VE"), Ashley Johnson, appeared and testified. Id.

On September 2, 2020, the ALJ issued a decision unfavorable to Plaintiff, finding that Plaintiff was not disabled within the meaning of the Social Security Act and Regulations. TR 12-28. In contrast to the findings of the first ALJ (TR 69), ALJ Alden found that Plaintiff could return to her past relevant work as a cashier-checker. TR 23. Specifically, the ALJ made the following findings of fact:

> 1. The claimant last met the insured status requirements of the Social Security Act on December 31, 2019.
>
> 2. The claimant did not engage in substantial gainful activity during the period from her alleged onset of May 1, 2018 through her date last insured of December 31, 2019 (20 CFR 404.1571 et seq.).
>
> 3. Through the date last insured, the claimant had the following severe impairments: rheumatoid arthritis (RA); morbid obesity; dysfunction of major joints – right shoulder; and thyroid disorder (20 CFR 404.1520(c)).
>
> 4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of 12.04 of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> 5. After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she can lift and/or carry 20 pounds occasionally, 10 pounds frequently. She can stand and/or walk, with normal breaks, for a total of 6 hours per 8-hour workday, and can sit, with normal breaks, for a total of 6 hours per 8-hour workday. In terms of posture limitations, she can frequently climb ramps/stairs and ladders/ropes/scaffolds, and stoop. She can occasionally balance, kneel, crouch, and crawl. She can frequently reach overhead with the right upper extremity.
>
> 6. Through the date last insured, the claimant was capable of performing past relevant work as a cashier-checker, (DOT 211.462-014), SVP3, generally performed as light work and medium as performed by the claimant. Pursuant to the testimony of the vocational expert, the claimant is able to return to the job of cashier-checker as generally performed in the economy.

7. The claimant was not under a disability, as defined in the Social Security Act, at any time from May 1, 2018, the alleged onset date, through December 31, 2019, the date last insured (20 CFR 404.1520(f)).

TR 18, 21, 23.

On September 29, 2020, Plaintiff timely filed a request for review of the hearing decision. TR 171-72. On May 12, 2021, the Appeals Council issued a letter declining to review the case (TR 1-4), thereby rendering the decision of the ALJ the final decision of the Commissioner. This civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. § 405(g). If the Commissioner's findings are supported by substantial evidence, based upon the record as a whole, then these findings are conclusive. Id.

## II. REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## III. CONCLUSIONS OF LAW

### A. Standard of Review

This Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. See 42 U.S.C. § 405(g); Miller v. Comm'r of Soc. Sec., 811 F.3d 825, 833 (6th Cir. 2016). The purpose of this review is to determine: (1) whether substantial evidence exists in the record to support the Commissioner's decision, and (2) whether any legal errors were committed in the process of reaching that decision. Id. "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (alteration in original), quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197,

229 (1938).

"Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support the conclusion." *Her v. Comm'r of Soc. Sec.*, 203 F. 3d 388, 389 (6th Cir. 1999), *citing Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence" has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Comm'r of Soc. Sec.,* 105 F. 3d 244, 245 (6th Cir. 1996), citing *Consol. Edison Co*., 305 U.S. at 229; *see also Gentry v. Comm'r of Soc. Sec*., 741 F. 3d 708, 722 (6th Cir. 2014).

The reviewing court does not substitute its findings of fact for those of the Commissioner if substantial evidence supports the Commissioner's findings and inferences. *Garner v. Heckler*, 745 F. 2d 383, 387 (6th Cir. 1984). In fact, even if the evidence could also support a different conclusion, the decision of the ALJ must stand if substantial evidence supports the conclusion reached. *Her*, 203 F. 3d at 389, *citing Key v. Callahan*, 109 F. 3d 270, 273 (6th Cir. 1997).

If the Commissioner did not consider the record as a whole; however, the Commissioner's conclusion is undermined. *Hurst v. Sec'y of Health & Human Servs.*, 753 F. 2d 517, 519 (6th Cir. 1985), *citing Allen v. Califano*, 613 F. 2d 139, 145 (6th Cir. 1980). Moreover, an ALJ's decision lacks the support of substantial evidence if the ALJ fails to follow agency rules and regulations, "even where the conclusion of the ALJ may be justified based upon the record." *Miller v. Comm'r of Soc. Sec*., 811 F. 3d 825, 833 (6th Cir. 2016), *citing Gentry v. Comm'r of Soc. Sec.,* 741 F. 3d 708, 722 (6th Cir. 2014) (internal citations omitted); *Cole v. Astrue*, 661 F. 3d 931, 937 (6th Cir. 2011); *Wilson v. Comm'r of Soc. Sec*., 378 F. 3d 541, 544 (6th Cir. 2004); accord *Goppert v. Berryhill*, No. 3:16-cv-02739, 2018 WL 513435, at *4 (M.D. Tenn. Jan. 23, 2018), report and recommendation adopted by 2018 WL 138533 (Mar. 1, 2018).

In reviewing the decisions of the Commissioner, courts look to four types of evidence: (1)

objective medical findings regarding Plaintiff's condition; (2) diagnoses and opinions of medical experts; (3) subjective evidence of Plaintiff's condition; and (4) Plaintiff's age, education, and work experience. *Miracle v. Celebrezze*, 351 F. 2d 361, 374 (6th Cir. 1965).

**B.     Proceedings At The Administrative Level**

The claimant carries the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "Substantial gainful activity" not only includes previous work performed by Plaintiff, but also, considering Plaintiff's age, education, and work experience, any other relevant work that exists in the national economy in significant numbers regardless of whether such work exists in the immediate area in which Plaintiff lives, or whether a specific job vacancy exists, or whether Plaintiff would be hired if he or she applied. 42 U.S.C. § 423(d)(2)(A).

At the administrative level of review, the claimant's case is considered under a five-step sequential evaluation process summarized as follows:

> (1)  If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied.
>
> (2)  If the claimant is not found to have an impairment which significantly limits his or her ability to work (a "severe" impairment), then he or she is not disabled.
>
> (3)  If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the "listed" impairments or its equivalent.[2]  If a listing is met or equaled, benefits are owing without further inquiry.
>
> (4) If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can return to the job he or she previously held in light of his or her residual functional capacity (e.g., what the claimant can still do despite his or her limitations).  By showing a medical condition that prevents him

---
[2] The Listing of Impairments is found at 20 CFR § 404, Subpt. P, App. 1.

or her from returning to such past relevant work, the claimant establishes a prima facie case of disability.

(5) The burden then shifts to the Commissioner to establish the claimant's ability to work by proving the existence of a significant number of jobs in the national economy which the claimant could perform, given his or her age, experience, education, and residual functional capacity.

*See, e. g.* 20 CFR §§ 404.1520, 416.920; *see also Moon v. Sullivan*, 923 F. 2d 1175, 1181 (6th Cir. 1990).

The Commissioner's burden at the fifth step of the evaluation process can be satisfied by relying on the medical-vocational guidelines, otherwise known as "the grid," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. *Moon*, 923 F. 2d at 1181; 20 CFR § 404, Subpt. P, App. 2, Rule 200.00(e)(1), (2). *See also Damron v. Sec'y of Health & Human Servs.*, 778 F. 2d 279, 281-82 (6th Cir. 1985). Otherwise, the grid cannot be used to direct a conclusion, but only as a guide to the disability determination. Id. In such cases where the grid does not direct a conclusion as to the claimant's disability, the Commissioner must rebut the claimant's prima facie case by coming forward with particularized proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert testimony. *See Varley v. Sec'y of Health & Human Servs.*, 820 F. 2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity for purposes of the analysis required at stages four and five above, the Commissioner is required to consider the combined effect of all the claimant's impairments: mental and physical, exertional and nonexertional, severe and nonsevere. See 42 U.S.C.§ 423(d)(2)(B).

    C.    ***Dennard, Drummond, and Earley***

This case involves two applications for benefits, and the parties significantly differ in how

they view the applicable law for when a plaintiff has filed multiple applications for benefits. The first pertinent case is *Dennard v. Sec'y of Health & Human Services*, 907 F. 2d 598 (6th Cir. 1990). The Sixth Circuit has recently described its past *Dennard* decision in a succinct manner, stating:

> In *Dennard,* an ALJ concluded that the plaintiff could not perform his past relevant work as a resident care supervisor, which the ALJ characterized as "heavy." But the ALJ denied the plaintiff's application nonetheless because he found that the plaintiff had the ability to perform sedentary work and therefore was not disabled. The plaintiff filed a second disability claim. The ALJs who reviewed the second claim re-characterized the exertional level of the plaintiff's past relevant work as a resident care supervisor as "sedentary to light" and concluded that the plaintiff was not disabled because he could perform this past relevant work. This Court reversed, finding that subsequent ALJs could not re-characterize the exertional requirements of the plaintiff's previous position.

*Amburgey v. Comm'r of Soc. Sec.*, 751 F. App'x 851, 862-63 (6th Cir. 2018) (citations omitted).

A few years later, the Sixth Circuit considered a similar, yet significantly different, situation in *Drummond v. Comm'r of Soc. Sec*, 126 F. 3d 837 (6th Cir. 1997). Grace Drummond filed three DIB applications, of which the first and third are relevant as there is no record of a determination on her second application. Id. at 839-39. The first ALJ found that *Drummond* was limited to sedentary work. Id. at 838. The second ALJ found that *Drummond* could perform medium level work. Id. at 839. This was pertinent because if the second ALJ had found that *Drummond* could perform only sedentary work, *Drummond* would have been found disabled given her age at the time of the second determination. *Id.* Ultimately, the Sixth Circuit held that the second ALJ was bound by the RFC determination of the first ALJ due to principles of *res judicata*, reasoning that no substantial evidence was introduced between the decisions. *Id.* at 843. The main concern in *Drummond* was that the second ALJ redefined the plaintiff's RFC, while the issue in *Dennard* was that the second ALJ redefined the demands of the plaintiff's previous job. *Id.*; *Dennard*, 907 F. 2d at 600.

Recently, the Sixth Circuit in *Earley v. Comm'r Soc. Sec.*, 893 F. 3d 929 (6th Cir. 2018)

8

clarified the *Drummond* holding. In *Earley*, Sharon Earley filed two applications for disability benefits, and the same ALJ conducted the hearings for each application. *Id*. at 931. In the first application, the ALJ found *Earley* not disabled because she was capable of light work and there were a significant number of jobs she could perform. *Id. Earley* then filed a second application covering a new time period. *Id.* at 931-32. Due to the *Drummond* decision, the ALJ who heard the second application thought he was bound by the findings of the first ALJ unless the plaintiff presented new and material evidence. *Id*. at 931. Thus, the second ALJ denied *Earley* benefits. *Id*. However, the Sixth Circuit disagreed and remanded the case. Id. at 935. The Sixth Circuit explained:

> When an individual seeks disability benefits for a distinct period of time, each application is entitled to review. There is nothing in the relevant statutes to the contrary. And res judicata only "foreclose[s] successive litigation of the very same claim." *New Hampshire v. Maine*, 532 U.S. 742, 748, 121 S. Ct. 1808, 149 L. Ed. 2d 968 (2001).

*Id*. at 933.

Furthermore, in the *Earley* decision, the Sixth Circuit discussed the *Drummond* decision. *Id*. at 934. It stated that *Drummond* came to the right outcome but included an overstatement of the law. *Id*. at 933. The court explained:

> *Drummond* involved a black swan—the unusual situation in which the individual wanted the administrative law judge to make the same finding on one issue that he had made in a prior ruling. Most applicants reapply only because the Administration found them not to be disabled. Just ask Sharon Earley. All applicants in that setting want the next administrative law judge to examine the new record and make a new, more favorable finding.

*Id*. at 934 (citations omitted).

The case at bar involves a "*Drummond*," a plaintiff who desires that the findings from a previous ALJ regarding her RFC be binding, which is what the Sixth Circuit calls the "black swan" situation. *Id*. However, the holding in *Earley*, while decided in an attempt to help plaintiffs who

9

do not want RFC findings by prior ALJs to be binding, also applies to plaintiffs who want these previous findings to be binding. See id. at 933 ("When an individual seeks disability benefits for a distinct period of time, each application is entitled to review."); *see also Burrage v. Saul*, No. 2:18-cv-00079, 2019 WL 3780095, at *5-6 (M.D. Tenn. Aug. 12, 2019), report and recommendation adopted by 2019 WL 4415569 (M.D. Tenn. Sept. 16, 2019).

## IV. PLAINTIFF'S STATEMENT OF ERRORS

Plaintiff contends that (1) substantial evidence did not support the ALJ's determination of Plaintiff's residual functional capacity, specifically regarding Plaintiff's ability to reach overhead with her upper extremities; (2) ALJ Alden erred in failing to apply Dennard, arguing that ALJ Alden should have found that Plaintiff could not return to her past relevant work; and (3) if Plaintiff is found to be unable to return to her past relevant work, she must be found disabled pursuant to Grid Rule 202.06. Docket No. 15, pp. 8-10. Accordingly, Plaintiff maintains that, pursuant to 42 U.S.C. § 405(g), the Commissioner's decision should be reversed, or in the alternative, remanded. Id.

Sentence four of § 405(g) states as follows:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

42 U.S.C. §§ 405(g), 1383(c)(3).

"In cases where there is an adequate record, the Secretary's decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery v. Heckler*, 771 F. 2d 966, 973 (6th Cir. 1985). Furthermore, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record

10

adequately establishes a plaintiff's entitlement to benefits. *Earley*, 893 F. 3d at 934-35, *citing Faucher v. Sec'y of Health & Human Servs.*, 17 F. 3d 171, 176 (6th Cir. 1994); *see also Newkirk v. Shalala,* 25 F. 3d 316, 318 (6th Cir. 1994).

### A. Plaintiff's Residual Functional Capacity

Plaintiff contends that the ALJ who heard her second disability application improperly determined her Residual Functional Capacity. Docket No. 15, pp. 9-10. Defendant responds that the ALJ properly determined the Plaintiff's Residual Functional Capacity. Docket No. 18, p. 5.

"Residual Functional Capacity" is defined as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 CFR §404, Subpt. P, App. 2 § 200.00(c). With regard to the evaluation of physical abilities in determining a claimant's RFC, the Regulations state:

> When we assess your physical abilities, we first assess the nature and extent of your physical limitations and then determine your residual functional capacity for work activity on a regular and continuing basis. A limited ability to perform certain physical demands of work activity, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping or crouching), may reduce your ability to do past work and other work.

20 CFR§ 404.1545(b).

ALJ Spangler found that Plaintiff retained the residual functional capacity to perform light work with additional limitations. TR. 67. Specifically, the ALJ determined:

> [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except lifting 20 pounds occasionally and 10 pounds frequently. He [sic] could stand, walk and sit six hours in an eight-hour day. She could frequently climb ramps, stairs, ladders, ropes and scaffolds. She could do occasional balancing, frequent stooping, and occasional kneeling, crouching, and crawling with no more than occasional overhead reaching bilaterally.

TR 67.

ALJ Alden also determined that Plaintiff retained the residual functional capacity to

11

perform light work with additional limitations. TR 21. Specifically, the ALJ determined:

> After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she can lift and/or carry 20 pounds occasionally, 10 pounds frequently. She can stand and/or walk, with normal breaks, for a total of 6 hours per 8-hour workday, and can sit, with normal breaks, for a total of 6 hours per 8-hour workday. In terms of posture limitations, she can frequently climb ramps/stairs and ladders/ropes/scaffolds, and stoop. She can occasionally balance, kneel, crouch, and crawl. She can frequently reach overhead with the right upper extremity.

*Id.*

One difference between the two ALJs' determinations is that ALJ Spangler found that Plaintiff could only occasionally reach overhead bilaterally (TR 67), while ALJ Alden found that Plaintiff could frequently reach overhead with the right upper extremity. TR 21. Plaintiff argues that the subsequent ALJ was bound by the prior ALJ's determination that she could only occasionally reach overhead bilaterally because there was no "new and additional evidence" introduced after Plaintiff's first hearing. Docket No. 15, p. 9. As explained in the section above, in *Drummond*, the Sixth Circuit held that when a plaintiff files multiple disability claims, a subsequent ALJ may not reconsider a prior ALJ's findings regarding a plaintiff's residual functional capacity unless there is new substantial evidence regarding the plaintiff's condition. 126 F. 3d at 842-43. However, the Sixth Circuit in *Earley* clarified the holding in *Drummond*. *See Earley*, 893 F. 3d at 931-34. The court clarified that subsequent ALJs are not bound by findings from prior ALJs regarding a plaintiff's residual functional capacity when the two disability claims cover distinct time periods. Id. at 931.

Therefore, this Court finds that principles of *res judicata* did not bar ALJ Alden from reconsidering the Plaintiff's residual functional capacity. Plaintiff's two disability claims cover two distinct time periods. Plaintiff's first disability claim covered from October 29, 2014, through

March 28, 2018. TR 59, 71. Plaintiff's second disability claim covered from May 1, 2018 (TR 175) through December 31, 2019. TR 24. Thus, while ALJ Alden could consider ALJ Spangler's findings regarding Plaintiff's residual functional capacity, ALJ Alden was not bound by the ALJ Spangler's findings regarding Plaintiff's residual functional capacity. He was entitled to give the record a "fresh look." *See Earley*, 893 F. 3d at 931.

Nevertheless, this Court finds that substantial evidence did not support ALJ Alden's determination that Plaintiff retains the ability to frequently reach overhead with her right arm. "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support the conclusion." *Her*, 203 F. 3d at 389, *citing Richardson*, 402 U.S. at 401. "Substantial evidence" has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance." *Bell*, 105 F. 3d at 245, *citing Consol. Edison Co.*, 305 U.S. at 229; *see also Gentry*, 741 F. 3d at 722.

The reviewing court does not substitute its findings of fact for those of the Commissioner if substantial evidence supports the Commissioner's findings and inferences. *Garner*, 745 F. 2d at 387. In fact, even if the evidence could also support a different conclusion, the ALJ's decision must stand if substantial evidence supports the conclusion reached. *Her*, 203 F. 3d at 389, *citing Key*, 109 F. 3d at 273. If the Commissioner did not consider the record as a whole, however, the Commissioner's conclusion is undermined. *Hurst*, 753 F. 2d at 519, *citing Allen*, 613 F. 2d at 145.

ALJ Alden found that Plaintiff "can frequently reach overhead with the right upper extremity." TR 21. The Court agrees with Defendant and ALJ Alden that substantial evidence supports that Plaintiff does not have a limitation on her ability to reach overhead with her left arm. However, ALJ Alden does not describe any medical evidence that supports his determination that Plaintiff retains the ability to frequently reach overhead with her right arm. To the contrary, all the

evidence that ALJ Alden cited supports that Plaintiff cannot frequently reach overhead with her right arm. In May 2019, Dr. Yung Chung found that Plaintiff could only occasionally reach overhead bilaterally. TR 86. In October 2019, Dr. Thrush found that Plaintiff could only occasionally reach overhead bilaterally. TR 115-16. The ALJ cites to the medical opinions of Dr. Yung Chung and Dr. Thrush, stating:

> [The opinions] are somewhat persuasive and are mostly consistent with the medical evidence of record; however, there is no substantive evidence that supports the occasional reaching overhead bilaterally although the claimant maintained she had neck pain that radiated into her shoulders and her arms (Exhibit B2A and B5A). I find the updated medical evidence supports only a minimal right upper extremity limitation rather than limitations for both upper extremities.

TR 22-23.

ALJ Alden cites to records from Plaintiff's visits with Dr. Kanagasegar, her rheumatologist. TR 22. At Plaintiff's July 2018 visit, Dr. Kanagasegar found in his physical exam of Plaintiff that the range of motion in her right arm was restricted. TR 298. Likewise, at Plaintiff's August 2018 visit, Dr. Kanagasegar found in his physical exam of Plaintiff that the range of motion in her right arm was restricted. TR 294. In both visits, Plaintiff reported pain in her upper right extremity. TR 294, 297. In addition, ALJ Alden found that two of Plaintiff's severe impairments are morbid obesity and dysfunction of major joints – right shoulder. TR 18. In his opinion, ALJ Alden explains that "[o]besity increases stress on weight-bearing joints and may contribute to limitation of the range of motion of the skeletal spine and extremities." TR 18-19 (emphasis added).

Furthermore, ALJ Alden cites to Plaintiff's testimony in which she describes the limits of her arm. ALJ Alden stated:

> Claimant reported arm pain that affects her ability to lift her arm and soreness of her shoulder and top of her arm. She said she felt a tearing sensation if she attempted to carry any weight; attempted to put on a shirt; work on a keyboard; or raise her

14

arm overhead.

TR 22.

Thus, while ALJ Alden makes a conclusory statement that medical evidence supports only a minimal right upper extremity limitation (TR 23), all the evidence and information that ALJ Alden cites in his opinion indicates that Plaintiff has more than a minimal limitation on her ability to reach overhead with her right arm. TR 21-23. Therefore, this Court finds that there is not substantial evidence to support ALJ Alden's finding that Plaintiff retains the ability to frequently reach overhead with her right arm.

### B. Recharacterizing Plaintiff's Previous Work

Plaintiff argues that ALJ Alden found Plaintiff could perform her previous work in violation of *Dennard*. Docket No. 15, p. 8-10. Defendant asserts that the ALJ did not violate *Dennard* because "the ALJ did not re-characterize the exertional level of Plaintiff's past relevant work." Docket No. 18, p. 13. While Plaintiff has worked multiple relevant jobs, the only job that ALJ Alden determined she could perform was her previous job as a cashier-checker. TR 23. Both ALJs agreed that Plaintiff could not perform any of her other previous relevant work. TR 23, 69-70. Therefore, the following discussion is limited to Plaintiff's previous job as a cashier-checker. Due to collateral estoppel, ALJ Alden was prohibited from redefining the type of work that a cashier-checker requires. Thus, ALJ Alden should have determined that Plaintiff cannot return to her previous work as a cashier-checker.

When a plaintiff has filed multiple disability claims, collateral estoppel prevents a subsequent ALJ from redefining a plaintiff's past relevant work absent changed circumstances. *See Dennard*, 907 F.2d at 600; *Brewster v. Barnhart*, 145 F. App'x. 542, 546 (6th Cir. 2005). Furthermore, when a Plaintiff has filed multiple disability applications, new testimony from

Vocational Experts at the subsequent hearings does not count as changed circumstances that would allow an ALJ to reconsider the demands of a Plaintiff's previous work. *See Brewster*, 145 F. App'x at 549.

Plaintiff argues that ALJ Alden violated Dennard when he determined that Plaintiff could return to past relevant work (Docket No. 15, pp. 8-10), and this Court agrees with Plaintiff. However, the Court does not agree with Plaintiff's reasoning. Plaintiff suggests that ALJ Alden violated Dennard because he redetermined Plaintiff's residual functional capacity. Id. at 9. However, as explained in the section above, subsequent ALJs are permitted to redefine a plaintiff's residual functional capacity. Instead, ALJ Alden violated Dennard and the doctrine of collateral estoppel when he recategorized Plaintiff's work as a cashier-checker.

In assessing Plaintiff's first disability application, ALJ Spangler found that Plaintiff was unable to perform any past relevant work. TR 69. In making this determination, ALJ Spangler relied on the testimony from a vocational expert. Id. The ALJ stated in his decision, "The vocational expert testified that the claimant's past work as a cashier checker (DOT 211.462-014) was semi-skilled (SVP3) and classified as light exertion but performed at medium exertion." Id. ALJ Spangler found that Plaintiff could perform light work with additional limitations. TR 67. Regarding Plaintiff's ability to perform light work, ALJ Spangler stated, "If the claimant had the residual capacity to perform the full range of light work, a finding of 'not disabled' would be directed by Medical-Vocational Rule 202.13. However, the claimant's ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations." TR 70. Given Plaintiff could not perform the full range of light work, the ALJ found that Plaintiff could not perform her previous work as a cashier-checker as actually or generally performed. TR 69-70.

Regarding Plaintiff's second disability application, ALJ Alden found that Plaintiff was able to perform her past job as a cashier-checker. TR 23. Like the previous ALJ, ALJ Alden found that Plaintiff's previous job as a cashier-checker required light work as generally performed and medium work as performed by the claimant. Id. However, ALJ Alden further found, pursuant to the testimony of a new vocational expert, that a person who can perform light work with specific additional limitations can perform the job of a cashier-checker as generally performed. In making this determination, the vocational expert in Plaintiff's second application relied on (1) her experience, (2) sources other than the DOT, and (3) specific knowledge of employers and how jobs are performed. *Id*. The second ALJ's finding that a hypothetical person who can only perform light work with additional limitations can perform the job of a cashier-clerk (TR 23) differs from the finding of the prior ALJ, who simply found that the cashier-checker job required the ability to perform light work. TR 69-70. The previous ALJ in no way indicated that a person who could only perform light work with additional limitations could perform the job of a cashier-checker. Id.

In essence, ALJ Alden created a new category in which to place Plaintiff's job of cashier-checker, one of light work with certain additional limitations. A subsequent ALJ may not recategorize a Plaintiff's previous work that a prior ALJ has already assessed absent changed circumstances. *See Dennard*, 907 F.2d at 600; *Brewster*, 145 F. App'x at 546. In addition, the testimony from the vocational expert at Plaintiff's second hearing is not new and material evidence, and, therefore, the ALJ could not rely on it to recategorize the plaintiff's past relevant work. *See Brewster*, 145 F. App'x at 549. Thus, ALJ Alden recategorized Plaintiff's previous work in violation of *Dennard*.

In summary, this Court finds that ALJ Alden did not violate *Dennard* or *Drummond* in reassessing Plaintiff's RFC. In addition, this Court finds that ALJ Alden did not have substantial

17

Case 2:21-cv-00029 Document 19 Filed 07/13/22 Page 17 of 20 PageID #: 586

evidence to support his finding that Plaintiff could frequently reach overhead with her right upper extremity. However, most importantly, ALJ Alden erred in redefining Plaintiff's previous work as a cashier-checker in violation of *Dennard* and the doctrine of collateral estoppel.

Ms. Allen likely thought that ALJ Alden would rely on and give great weight to ALJ Spangler's determination that she could not return to her previous job as a cashier-checker. Given Ms. Allen's age, she likely thought this meant she would automatically be considered disabled within the meaning of the Act and be awarded her benefits. It is the Court's impression that ALJ Alden slightly altered Plaintiff's RFC. Then, ALJ Alden used a new VE's testimony to redefine the specific contours of what Plaintiff's previous work required, even though ALJ Spangler's decision indicates that he believed the job of a cashier-checker required the ability to fully perform light work. Using the new VE testimony, in combination with the ever so slightly adjusted RFC, ALJ Alden decided Ms. Allen could return to her previous job. This situation troubles the Court.

ALJ Spangler found that Plaintiff's previous job as a cashier-checker required light work as generally performed. TR 69. ALJ Spangler gave no indication that a person who can only perform light work with additional limitations can perform the job of a cashier-checker. TR 69-70. If ALJ Alden (the second ALJ) had correctly followed the first ALJ's findings regarding the demands of Plaintiff's previous work as a cashier-checker, then ALJ Alden would have had to find that Plaintiff cannot perform the work as generally or actually performed, considering ALJ Alden found that Plaintiff could only perform light work with additional limitations. TR 21. Thus, the Court finds that Plaintiff is unable to return to her work as a cashier-checker. As both ALJs agree that Plaintiff is unable to return to any of her other past relevant work (TR 23, 69-70), the Court finds that Plaintiff is unable to return to any of her past relevant work.

### C. Grid Rule 202.06

Plaintiff argues that if she cannot return to her prior work, Grid Rule 202.06 dictates that she be found disabled; however, Plaintiff fails to provide any additional explanation. Docket No. 15, p. 10. Besides contending that Plaintiff was capable of performing her past relevant work, Defendant fails to present any arguments for why Grid Rule 202.06 should not apply to Plaintiff. Docket. No. 18. This Court believes that the determination of whether Plaintiff meets the qualifications to be considered disabled pursuant to Grid Rule 202.06 should be decided on remand.

## V. RECOMMENDATION

Upon consideration of the parties' filings, the administrative record and applicable law, and for the foregoing reasons, the Magistrate Judge **RECOMMENDS** that Plaintiff's Motion for Judgment on the Administrative Record, Docket No. 14, be **GRANTED** and that this action be **REMANDED** for the determination if Plaintiff meets the qualifications of Grid Rule 202.06 to be considered disabled in a manner not inconsistent with this Report and Recommendation, pursuant to sentence four of 42 U.S.C. § 405(g). To be clear, Plaintiff cannot return to her past relevant work, and on remand this issue should not be revisited.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. See Thomas v. Arn, 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1);

Fed. R. Civ. P. 72.

_____
**JEFFERY S. FRENSLEY**
**United States Magistrate Judge**